IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO. 3:09-00163

JOEL ADOLFO BORJAS-HERNANDEZ
    also known as "Jose Hernandez Salazar"
    also known as "Carlos"

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Joel Adolfo Borjas-Hernandez's Motion to Reduce Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 158. The Government has responded in opposition to the motion. For the following reasons, the Court **DENIES** the motion.

**I.
BACKGROUND**

On August 24, 2010, Defendant pled guilty to an information charging him with conspiracy to distribute one kilogram or more of heroin in violation of 21 U.S.C. § 846. In exchange for his guilty plea, the Government agreed to dismiss a one-count indictment against him charging him with conspiracy to distribute 100 grams or more of heroin causing death. In the Stipulation of Facts attached to the Plea Agreement, Defendant agreed that he was involved in trafficking black tar heroin in Columbus, Ohio, Huntington, West Virginia, and elsewhere, by providing it to street-level dealers for distribution. *Stip. of Facts*, at 1, ECF No. 77. He also agreed that the heroin he distributed was packaged in plastic and foil and that Patrick Byars died of a heroin overdose. *Id*.

Thereafter, on January 18, 2011, the Court held a nearly three-hour sentencing hearing. At the hearing, the Court considered several objections made by Defendant. The Court also heard extensive testimony about how the powerful black tar heroin Defendant[1] distributed was linked to the tragic overdose deaths of three individuals within a three-day time period.

After listening to the evidence, the Court expressly rejected Defendant's objection to receiving a base offense level of 38 under U.S.S.G. §2D1.1(a)(2) for the offense of conviction resulting in the death of Patrick Byars. The Court found there was "ample direct and circumstantial evidence to support the findings in the presentence report; first and foremost . . . that heroin supplied by [Defendant] resulted in the death of Patrick Byars[.]" *Sentencing Tr.* at 101 (Jan. 18, 2011), ECF No. 114. The Court noted there was considerable testimony that Defendant packaged his heroin uniquely in aluminum foil and plastic and his heroin was preferred and sought after by drug abusers because of its quality and potency. *Id.* at 102-03; s*ee also id.* at 15, 31 (Testimony of DEA Agent Tom E. Bevins describing that people wanted the heroin wrapped in aluminum foil and plastic because it was more potent). Witnesses also described Defendant as conducting drug transactions in a similar way, and he directed runners and others to help him distribute. *Id*. at 103. The Court found it "uncontroverted" that at least two individuals "were acting as middlemen to help individuals from West Virginia come to Columbus and acquire heroin from the defendant. The amounts that they were purchasing made it clear that they were buying heroin from the defendant in order to bring it back to the

---

[1]Defendant was referred to by many as "Carlos."

Huntington area to distribute or sell." *Id*. at 104. Given the totality of the circumstances, the Court easily found Defendant "was at the head of this particular conspiracy[.]" *Id*.

In addition, the Court rejected Defendant's argument that someone else may have supplied the heroin that resulted in the overdose deaths. The testimony demonstrated that Michelle Byars got black tar heroin from Rick Jordan, who had obtained the heroin from Defendant. Two days after getting the heroin, Ms. Byars shared the heroin with Patrick Byars, who died shortly after using it. *Id.* at 8, 84-85 (Testimony of DEA Agent Bevins and Michelle Byars). Ms. Byars testified the black tar heroin they used was in Defendant's "trademark" plastic and foil packaging. *Id*. at 85. The Court noted that Mr. Byars had used heroin in the past, but he died soon after ingesting the heroin Ms. Byars gave him. *Id*. at 105-07. The Court found the strength of the heroin was consistent with the high-quality heroin Defendant was known to distribute and in the same unique packaging as the heroin that Adam Johnson and George Shore took when they died during the same time period. *Id*. at 107.[2] The Court also found it was extremely unlikely the heroin came from another source. *Id*. at 106.

Given the evidence, the Court concluded "that the defendant's offense of conviction resulted in the death of Patrick Byars" and, therefore, the Court applied §2D1.1(a)(2), which provides for a base offense level of 38. *Id*. at 109; *see also id.* at 101 (finding by the Court that the "heroin supplied by this defendant resulted in the death of Patrick Byars"). At the

---

[2]According to the Presentence Report, Mr. Johnson died on September 21, Mr. Shore likely died on September 22, and Mr. Byars died on September 23, 2007. *Presentence Report*, at ¶13, ECF No. 95.

conclusion of the hearing, the Court sentenced Defendant to 292 months imprisonment, 5 years of supervised release, and a $100 special assessment. *Id.* at 123.

Thereafter, Defendant appealed the Court's decision. Upon review, the Fourth Circuit Court of Appeals found this Court "did not err in calculating the advisory Guidelines range" and denied his argument his sentence was unreasonable. *United States v. Borjas-Hernandez*, 452 F. App'x 314, 315 (4th Cir. 2011) (per curiam). Defendant then filed a motion pursuant to 28 U.S.C. § 2255 collaterally attacking his sentence. Without objection from Defendant, the Court adopted the findings and recommendation of the Magistrate Judge finding, in part, that this Court properly applied §2D1.1(a)(2) to Defendant for Mr. Byars' death. *Borjas-Hernandez v. United States*, No. 3:12-8368, 2014 WL 1572803, at *7 (S.D.W. Va. Apr. 17, 2014). Subsequently, the Court also denied Defendant's motion for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(2) and motion for reconsideration. *Motions to Reduce Sentence*, ECF Nos. 143-44; *Ltr.-Form Motion for Reconsideration*, ECF No. 147; *Order*, ECF No. 148. The Court's decision was affirmed by the Fourth Circuit. *United States v. Borjas-Hernandez*, 635 F. App'x 91 (4th Cir. 2016) (per curiam). Defendant now brings the current action as a successive motion for relief pursuant to § 3582.

## II.
## DISCUSSION

The Fourth Circuit held in *United States v. Collington*, 995 F.3d 347 (4th Cir. 2021), that "the First Step Act tasks district courts with making a holistic resentencing determination as to whether the original sentence remains appropriate in light of the Fair Sentencing Act's reforms." 995 F.3d at 355 (citations omitted). Indeed, "section 404(c) of the

4

First Step Act requires district courts to undertake 'a complete review of the motion on the merits.'" *Id*. at 359 (quoting FSA § 404(c), 132 Stat. at 5222). Additionally, any sentence imposed must be both procedurally and substantively reasonable. *Id*. at 358. If there is a large deviation from the Guideline range, a district court must justify the revised sentence under the totality of the circumstances to fulfill the substantive reasonableness requirement. *Id*. at 360. In the end, the sentence must be "'sufficient, but not greater than necessary' under the [18 U.S.C.] § 3553(a) factors." *Id*. (citation omitted). To afford a defendant both procedural and substantive reasonableness, the Fourth Circuit further held that district courts must "consider a defendant's arguments, give individual consideration to the defendant's characteristics in light of the § 3553(a) factors, determine—following the Fair Sentencing Act—whether a given sentence remains appropriate in light of those factors, and adequately explain that decision." *Id*. at 360; *see also United States v. Fowler*, 948 F.3d 663, 668 (4th Cir. 2020) (finding "[a] sentence is substantively unreasonable if it is longer than necessary to serve the purposes of sentencing" (citations omitted)).[3] With these principles in mind, the Court considers Defendant's arguments in this case.

In his motion, Defendant seeks to have his sentence reduced to time served on three grounds. First, he argues the Court applied the wrong burden of proof in finding his offense of conviction resulted in the death of Mr. Byars. Second, he asserts he should be released because of the COVID-19 pandemic. Third, he seeks release to care for his mother. Upon

---

[3]On September 14, 2022, the Fourth Circuit issued *United States v. Swain*, 49 F.4th 398 (4th Cir. 2022), which reiterated and expanded upon its decision in *Collington*. In *Swain*, the

review, the Court finds that none of these arguments either considered separately or collectively warrant Defendant's release.

### A.
### Burden of Proof

With respect to his burden of proof argument, Defendant argues that *Burrage v. United States*, 571 U.S. 204 (2014), applies retroactively to his case and requires the Court to have found that Mr. Byars' death would not have occurred "but for" his use of heroin attributable to Defendant's offense of conviction. *See Burrage*, 571 U.S. at 218-19 (holding that but-for causation is mandated for increased punishment for death under 21 U.S.C. § 841(b)(1)(C)). Although Defendant here did not receive an enhanced minimum *statutory* sentence as in *Burrage*,[4] the Fourth Circuit held in *Young v. Antonelli*, 982 F.3d 914 (4th Cir. 2020), "that *Burrage's* statutory interpretation applies equally to § 2D1.1(a) of the Sentencing Guidelines in place prior to [*United States v.*] *Booker*, [543 U.S. 220 (2005)]." 982 F.3d at 920. In this case, Defendant was sentenced after *Booker* when the Sentencing Guidelines were no longer mandatory and the Court was given more discretion to fashion an appropriate sentence. Nevertheless, even if the *Burrage/Young* standard retroactively applies to Defendant's case, the Court finds the standard was met.

Although the Court did not expressly use the words "but for" at Defendant's sentencing, even a cursory review of the Court's findings at the hearing demonstrate that

---

Fourth Circuit held "that pursuant to *Collington*, substantive reasonableness review applies to all section 404 proceedings." 49 F.4th at 402.

[4]Defendant's statutory sentence was not less than 10 years or more than life. *See* 21 U.S.C. §§ 846 and 841(b)(1)(A)(i).

Defendant's argument is one of semantics, not substance. There was overwhelming evidence presented at the hearing linking Defendant to the heroin Mr. Byars used immediately before he died. Given the totality of the evidence, the Court specifically found "that the defendant's offense of conviction resulted in the death of Patrick Byars[.]" *Sentencing Tr.* at 109. The Court's conclusion that Mr. Byars died from snorting the potent heroin distributed by Defendant was clear, unequivocal, and easily satisfies the "but-for" standard announced in *Burrage* and *Young*. Thus, the Court finds that Defendant's argument he should not have received a base offense level of 38 under the §2D1.1(a)(2) lacks merit.[5]

## B.
## COVID-19 Pandemic

Likewise, the Court finds no merit to Defendant's argument he should be released because of the COVID-19 pandemic. "During the pandemic, courts have recognized that compassionate release is appropriate where an inmate has shown both a particularized susceptibility to the virus and a particularized risk that he will contract the virus at his facility." *United States v. Molinaro*, Crim. Act. No. 3:19-00096-01, 2022 WL 3229967, at *2 (S.D. W. Va.

---

[5]The Court's analysis is not changed by the fact Mr. Byars' death certificate provides he had heroin, alprazolam, and diazepam in his system. *See Med. Exam'r Cert. of Death for Patrick Byars,* ECF No. 163-10, at 3. Mr. Byars died shortly after taking the highly-potent heroin distributed by Defendant. Within the same time period, the evidence also shows both Mr. Johnson and Mr. Shore died after consuming the heroin Defendant distributed. The confluence of these three deaths is more than a mere coincidence. In fact, Mr. Johnson's death certificate showed only morphine intoxication. *Med. Exam'r Cert. of Death for Adam Johnson,* ECF No. 163-10, at 1. The fact Mr. Johnson had no other drugs attributed to his death supports the fact it was the strength of the heroin that killed all three men. Moreover, and importantly, Defendant agreed in the Stipulation of Facts attached to his Plea Agreement that Mr. Byars died of a heroin overdose.

Aug. 10, 2022) (citations omitted). However, in this case, Defendant meets neither of those criteria.

At the time he filed his motion, Defendant was housed at the North Lake Correctional Facility (NLCF), and he complained about the lack of COVID-19 safety protocols at the facility. After he filed his motion, NLCF was closed, and Defendant was transferred to USP Yazoo City, Mississippi, where there currently are no cases of COVID-19 and it is at an Operational Level 1 in accordance with Bureau of Prisons (BOP) protocols. *See* https://www.bop.gov/coronavirus/ (last visited Dec. 21, 2022); https://www.bop.gov/locations/institutions/yap/ (last visited Dec. 21, 2022). Thus, there is no evidence Defendant is at particularized risk of contracting COVID-19 where he is currently housed.

Nevertheless, Defendant insists that he is particularly susceptible to the virus because he is Hispanic and is a former smoker. However, Defendant is only 37 years old and has a Care Level 1 inmate, indicating he is healthy or needs only simple chronic care. *See Inmate Profile* (Aug. 23, 2022), ECF No. 163-6. According to the Government, there are no records from the Bureau of Prisons that Defendant has any serious or chronic medical ailments. Defendant also states he has been vaccinated and boosted against contracting COVID-19. Given Defendant's health profile and the fact there are no cases of COVID-19 at USP Yazoo City, the Court finds Defendant has failed to establish that he is entitled him to compassionate release due to the pandemic.

## C.
## Release to Provide Caregiving

Defendant's third argument is that he should be released to care for his mother. As this Court stated in *United States v. Jackson*, Crim. Act. No. 3:05-00184-01, 2022 WL 2977333 (S.D. W. Va. July 27, 2022),[6] "[t]he Guidelines contain an application note detailing the types of family circumstances warranting release as extraordinary and compelling reasons. U.S.S.G. §1B1.13, cmt. n.1(C)." 2022 WL 2977333, at *5. These circumstances include caregiving for minor children, a spouse, and a registered partner. *Id*. However, "the application note does not extend to the incapacitation of a parent." *Id*.

Despite not being covered under the Guidelines, Defendant argues he should be released to help his mother throughout the duration of the pandemic because she is 64 years old and suffers from diabetes, hypertension, hyperlipidemia, fatty liver disease, depression, and anxiety and has used a cane since undergoing knee surgery in 2016. However, as in *Jackson*, Defendant does not allege his mother is unable to manage her care, is incapacitated, or currently lacks a caregiver. Although the Court certainly appreciates Defendant's concern for his mother, her susceptibility to COVID-19 is not an extraordinary and compelling reason to grant Defendant compassionate release even if the Court assumes Defendant has accurately represented her medical conditions.

---

[6] Reconsideration denied, Crim. Act. No. 3:05-00184-01, 2022 WL 5238930 (S.D. W.Va. Aug. 18, 2022), and motion for relief from judgment denied, Crim. Act. No. 3:05-00184-01, 2022 WL 17416496 (S.D. W. Va. Dec. 5, 2022).

**D.
Collective Consideration
of Defendant's Arguments**

Lastly, Defendant argues the collective effect of all three grounds, together with other circumstances, establish extraordinary and compelling reasons for granting him release under the factors outlined in § 3553(a). Under this section, the Court must conduct an "individualized assessment," *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020), and evaluate, as applicable:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a)(1) and (2); *see United States v. Jenkins,* 22 F.4th 162, 170 (4th Cir. 2021) ("If a district court finds that a defendant has demonstrated 'extraordinary and compelling reasons' for release, it must then consider the § 3553(a) sentencing factors 'to the extent that they are applicable' in deciding whether to exercise its discretion to reduce the defendant's sentence.").

In addition to above reasons, Defendant adds that the Court should reduce his sentence because he is a first-time offender, did not employ violence or firearms, has taken two continuing education adult classes (Continuum ED Short Activity and Beginners Aerobics), has no incident reports while incarcerated, has plans for employment in Mexico once released, and has maintained a close relationship with his family in Mexico. As a deportable alien, Defendant insists he will pose no danger to the community. Additionally, Defendant asserts his alienage has the effect of increased punishment because he is ineligible for prerelease custody, home confinement, and half-way house placement. Likewise, he cannot participate in the BOP's Residential Drug Abuse Treatment Program (which would reduce his sentence by one year once completed) or earn time credits for participation in other programs. *See, e.g., United States v. Smith*, 27 F.3d 649, 650 (D.C. Cir. 1994) (holding that a sentencing court may depart below the range recommended by the Sentencing Guidelines "where the defendant, solely because he is a deportable alien, faces the prospect of objectively more severe prison conditions than he would otherwise").[7]

In response, the Government agrees that Defendant is not eligible for home confinement because neither the BOP nor the Court has jurisdiction to monitor his home confinement in Mexico. However, it argues that Defendant's inability to be released from incarceration early does not warrant a reduction of sentence in this case. The Court agrees.

---

[7]Defendant cites *Smith* in support of his claim.

When Defendant was sentenced, his sentencing range was 292 to 365 months imprisonment. Upon considering the sentencing factors, the Court sentenced Defendant to 292 months, the very bottom of the range. In doing so, the Court denied Defendant's request for a variance, finding that he was at the top of the conspiracy and used runners to supply large amounts of potent and deadly black tar heroin throughout the area. *Tr.* at 107, 112. He also did not appear to be an addict distributing drugs to support his own habit. Rather, he operated his business for financial reward, with obvious disregard for the lives he destroyed. *Id*. at 112-13. Additionally, the Court noted Defendant was deported at least twice and "no doubt used his contacts from Mexico to help bring black tar heroin into the Columbus area in large amounts sufficient to make it a source of distribution of heroin throughout this Tri-State region." *Id*. at 113.

In considering these facts and Defendant's arguments in light of the § 3553 factors, the Court finds Defendant has failed to establish grounds for a reduced sentence. Although Defendant emphasizes that he will be deported and cannot possibly pose a danger to the community, the Court disagrees. Defendant has entered the United States illegally at least three times. The fact he will be deported to Mexico after he has completed his sentence brings the Court little comfort that he will not try again to reenter the United States to resume his drug activities. In addition, although the offense conduct did not involve a firearm, the black tar heroin Defendant distributed proved to be nonetheless deadly. Defendant's actions in this case were serious and had tragic consequences. Despite being ineligible for some benefits the BOP offers due to his status of a deportable alien, the Court finds that his sentence of 292 months reflects the

nature and circumstances of the offense, his history and characteristics, the seriousness of the offense, respect for the law, just punishment, deterrence, protects the public, and provides him correctional treatment in the most effective manner. Additionally, the Court finds his sentence is not greater than is necessary under the § 3553(a) factors.

## III.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **DENIES** Defendant Joel Adolfo Borjas-Hernandez's Motion to Reduce Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 158.

The Court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: December 21, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE